UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Donnie Ray Hall, | ) | Civil Action No.1:19-cv-01637-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Andrew M. Saul,[1] Acting Commissioner | ) | |
| of the Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court following the issuance of a Report and Recommendation

("R&R") by United States Magistrate Judge Shiva V. Hodges.[2]  Plaintiff, Donnie Hall, brought this

action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision

of the Commission of Social Security ("the Commissioner") denying his claims for Disability

Insurance Benefits (DIB).  The Magistrate Judge recommends affirming the Commissioner's

decision denying Plaintiff's claim for benefits.

## FACTUAL FINDINGS AND PROCEDURAL HISTORY

Plaintiff applied for DIB on March 20, 2012, alleging disability as of April 14, 2011.

Plaintiff has a history of several ailments including obesity, type II diabetes, degenerative disc

disease of his lumbar spine, degenerative joint disease involving his bilateral knees, degenerative

joint disease involving his right shoulder, carpal tunnel syndrome, status-post bilateral carpal tunnel

release, anxiety, affective disorder, hypertension, high cholesterol, renal insufficiency, irritable

---

[1]Andrew M. Saul became the Commissioner of the Social Security Administration on June 17, 2019.  Pursuant to Fed. R. Civ. P. 25(d), Saul is substituted for Nancy A. Berryhill.

[2] This matter was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2) for the District of South Carolina.

bowel syndrome, reflux, and sleep apnea.  Within the R&R, the Magistrate Judge adequately details Plaintiff's medical history.

 Plaintiff's claims were denied initially and on reconsideration.  Plaintiff then requested a hearing before an administrative law judge ("ALJ").  A hearing was held before the ALJ on March 3, 2015.  Plaintiff, represented by an attorney, appeared and testified.  A vocational expert also testified.  The ALJ issued a decision on, July 1, 2015, finding that Plaintiff was not disabled. [ALJ Decision, ECF #9-2, at 16-28].  Plaintiff requested review of the decision, and on September 21, 2016, the Appeals Council denied his request for review, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.

 Plaintiff filed an action for judicial review, and on August 1, 2017, this Court reversed the decision of the Commissioner and remanded the action for further administrative proceedings. Pursuant to the remand order, the Appeals Council directed the ALJ to evaluate the opinion evidence of treating physician, Dr. Rebecca Norris, M.D.  A hearing was held before the ALJ on May 8, 2018, and Plaintiff, represented by counsel, appeared and testified.  A vocational expert also testified.  The ALJ issued a decision on July 5, 2018, again finding Plaintiff was not disabled.  The ALJ's findings are as follows:

> 1.    The claimant last met the insured status requirements of the Social Security Act on June 30, 2015.
>
> 2.    The claimant did not engage in substantial gainful activity during the period from his alleged onset date of April 15, 2011, through his date last insured of June 30, 2016 (20 CFR 404.1571 *et. seq.*).
>
> 3.    Through the date last insured, June 30, 2016 the claimant had the following severe impairments:

2

obesity, type II diabetes, degenerative disc disease of lumbar spine, degenerative joint disease involving bilateral knees, degenerative joint disease involving right shoulder, carpal tunnel syndrome, status-post bilateral carpal tunnel release, anxiety and affective disorder (20 CFR 404.1520(c)).

4.    Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.    After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except never climb ladders/ropes/scaffolds, occasionally climbing ramps/stairs, balancing, stooping, crouching, kneeling, or crawling.  He can frequently handle with bilateral upper extremities.  He is limited to frequent exposure to environmental irritants such as fumes, odors, dusts or gases.  He can perform simple, routine, and repetitive tasks for two-hour blocks of time with normal rest breaks during an eight-hour workday.

6.    Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7.    The claimant was born on June 14, 1965 and was 45 years old, which is defined as a younger individual age 18-49, on the alleged onset date and was 51-years old and subsequently changed age category to closely approaching advanced age at the date last insured of June 30, 2016 (20 CFR 404.1563).

8.    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

3

9.   Transferability of job skills is not material to the
     determination of disability because the Medical-
     Vocational Rules as a framework supports a finding
     that the claimant is "not disabled," whether or not
     the claimant has transferable job skills (See SSR 82-
     41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Through the date last insured, considering the
     claimant's age, education, work experience, and
     residual functional capacity, there were jobs that
     existed in significant numbers in the national
     economy that the claimant could have performed
     (20 CFR 404.1569 and 404.1569(a)).

11.  The claimant was not under a disability, as defined
     in the Social Security Act, at any time from April
     15, 2011, the alleged onset date, through June 30,
     2016, the date last insured (20 CFR 404.1520(g)).

[ALJ Decision, ECF #9-13, at 18-32].

The ALJ's finding became the final decision of the Commission when the Appeals Council

denied Plaintiff's request for further review on April 26, 2019.  Plaintiff filed this action on June 6,

2019, seeking judicial review of the Commissioner's decision. [Compl., ECF #1].  Both Plaintiff and

the Commissioner filed briefs. [ECF ##10, 11, and 12].  The Magistrate Judge issued her R&R on

June 1, 2020, recommending that the Commissioner's decision be affirmed. [R&R, ECF #14].[3]

Plaintiff filed timely objections to the R&R on June 13, 2020. [Plaintiff's Objections, ECF #15].

The Commissioner filed a response to Plaintiff's objections on June 19, 2020. [Defendant's

Response to Plaintiff's Objections, ECF #16].

### STANDARD OF REVIEW

---

[3] Plaintiff submitted additional evidence to the Appeals Council, including a November 2018 opinion from Dr.
Swathgood and a February 2019 opinion from Dr. Norris. Tr. 733, 735.  The Magistrate Judge did not summarize
those opinions as part of the medical history because they were not before the ALJ at the time of his decision, and
Plaintiff did not argue the Appeals Council erred in failing to consider them. [R&R, ECF #14, at 3].

4

## I.  Judicial Review of the Commissioner's Findings

The federal judiciary has a limited role in the administrative scheme established by the Act, which provides the Commissioner's findings "shall be conclusive" if they are "supported by substantial evidence."  42 U.S.C. § 405(g).  "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance."  *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).  Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

This statutorily mandated standard precludes a de novo review of the factual circumstances that substitutes the Court's findings for those of the Commissioner.  *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *Hicks v. Gardner*, 393 F.2d 299, 302 (4th Cir. 1968).  The Court must uphold the Commissioner's factual findings "if they are supported by substantial evidence and were reached through application of the correct legal standard."  *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) (stating that even if the Court disagrees with the Commissioner's decision, the Court must uphold the decision if substantial evidence supports it).  This standard of review does not require, however, mechanical acceptance of the Commissioner's findings.  *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969).  The Court "must not abdicate [its] responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner]'s findings, and that his conclusion is rational."  *Vitek*, 438 F.2d at 1157-58.

## II.  The Court's Review of the Magistrate Judge's Report and Recommendation

The Magistrate Judge makes only a recommendation to the Court.  The Magistrate Judge's recommendation has no presumptive weight, and the responsibility to make a final determination

remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court must conduct a de novo review of those portions of the R&R to which specific objections are made, and it may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Court must engage in a de novo review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the Court need not conduct a de novo review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate [Judge]'s proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of specific objections to the R&R, the Court reviews only for clear error, *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005), and the Court need not give any explanation for adopting the Magistrate Judge's recommendation. *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983).

### APPLICABLE LAW

Under the Act, Plaintiff's eligibility for the sought-after benefits hinges on whether he is under a "disability." 42 U.S.C. § 423(a). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id*. § 423(d)(1)(A). The claimant bears the ultimate burden to prove disability. *Preston v. Heckler*, 769 F.2d 988, 991 n.* (4th Cir. 1985). The claimant may establish a prima facie case of disability based solely upon medical evidence by demonstrating that his impairments meet or equal the medical criteria set forth in Appendix 1 of

6

Subpart P of Part 404 of Title 20 of the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(d) & 416.920(d).

If such a showing is not possible, a claimant may also establish a prima facie case of disability by proving he could not perform his customary occupation as the result of physical or mental impairments. *See Taylor v. Weinberger*, 512 F.2d 664, 666-68 (4th Cir. 1975). This approach is premised on the claimant's inability to resolve the question solely on medical considerations, and it is therefore necessary to consider the medical evidence in conjunction with certain vocational factors. 20 C.F.R. §§ 404.1560(a) & § 416.960(a). These factors include the claimant's (1) residual functional capacity, (2) age, (3) education, (4) work experience, and (5) the existence of work "in significant numbers in the national economy" that the individual can perform. 20 C.F.R. §§ 404.1560(a), 404.1563, 404.1564, 404.1565, 404.1566, 416.960(a), 416.963, 416.964, 416.965, & 416.966. If an assessment of the claimant's residual functional capacity leads to the conclusion that he can no longer perform his previous work, it then becomes necessary to determine whether the claimant can perform some other type of work, taking into account remaining vocational factors. 20 C.F.R. §§ 404.1560(c)(1) & 416.960(c)(1). Appendix 2 of Subpart P governs the interrelation between these vocational factors.

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity; (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the

7

Listings;[4] (4) whether such impairment prevents claimant from performing past relevant work;[5] and (5) whether the impairment prevents him from doing substantial gainful activity. See 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5). Once an individual has made a prima facie showing of disability by establishing the inability to return to past relevant work, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the economy. To satisfy that burden, the Commissioner may obtain testimony from a vocational expert demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to past relevant work. *Walls v.*

---

[4]    The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[5]    In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

*Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant

must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65

(4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of

proof).

## ANALYSIS

Plaintiff's appeal from the ALJ's decision denying his claim for benefits concerns the ALJ's

evaluation of the opinion evidence offered by Dr. Rebecca Norris, M.D., in the questionnaire she

completed on September 5, 2014.  Tr. 586.  In that questionnaire, Dr. Norris (1) listed Plaintiff's

diagnoses as osteoarthritis of the spine, chronic back pain, diabetes mellitus, and apnea; (2) noted

those conditions caused Plaintiff pain and limited functioning in the use of his upper extremities;

and (3) opined Plaintiff could engage in frequent bilateral fine manipulation; rare bilateral gross

manipulation; rare pushing and pulling; and no overhead work.  *Id.*

The ALJ acknowledged Dr. Norris was a primary care provider for Plaintiff and noted he

gave "full consideration to the functional assessment of Dr. Norris, dated September 5, 2014 in

which she f[ound] [Plaintiff] to be considerably restricted."  [ALJ Decision, ECF #9-13, at 29].

However, the ALJ did not assign Dr. Norris's opinion controlling weight because he found her

opinion was not "adequately supported by the clinical findings of the record or other substantial and

credible evidence of record." *Id*.  The ALJ also noted he gave Dr. Norris's opinion little weight for

the following reasons:

> Her opinion is inconsistent with her physical examinations.
> Notably, the record is void of any abnormalities of the
> cervical spine that would plausibly produce the restrictions
> assessed by Dr. Norris.  Medical exams of Dr. Norris
> consistently note that claimant exhibits full range of motion

of the cervical spine without pain and normal motor
function and sensation of right and left upper extremities
(Ex 33F/23, 35,41, 45 and 56).

MRI imaging of the lumbar spine showed only lumbar facet
arthropathy at L5/S1 (Ex 19F/28) and while on clinical
examination, he has exhibited some tenderness in the
lumbar spine, as recently as January 2018, other than some
restriction in range of motion of the lumbar spine,
otherwise, paraspinal muscle strength and tone were within
normal limits (Ex 33F/56)

Her records do not support the limitations she gave with
regard to handling and grasping 'rarely," as her treatment
records are void of objective physical limitations involving
her bilateral upper extremities (Exs 28F and 33F).  Notably,
treatment records dated February 2015 reflect that claimant
denied any problems with numbness or tingling, muscle
pain or muscle weakness (Ex 28F/3).  Likewise, on June
28, 2016, only a couple of days prior to his date last
insured, the record is void of any complaint of difficulties
with his upper extremities and claimant reported 'normal
activities of daily living" (Ex 32F/47).  Further, in physicial
exam dated January 2018 claimant exhibited no tenderness
to right or left upper extremity with normal stability of the
bilateral shoulder, elbow and wrist joints and normal range
of motion with no crepitus or pain with motion (Exs
33F/56).

The limitations Dr. Norris gave are unsupported and
inconsistent with the physical examinations by the
specialist from Blue Ridge Orthopedics who performed an
arthroscopic right rotator cuff repair in October 2015 and in
August 2016 released claimant to "full-duty work from
shoulder standpoint" (Ex 34F/2).

[ALJ Decision, ECF #9-13, at 29-30].

Plaintiff argues the ALJ failed to provide adequate reasons for rejecting portions of Dr.

Norris's opinions for a number of reasons.  The Magistrate Judge disagreed and recommended this

Court find "substantial evidence supported the ALJ's decision not to accord controlling weight to

Dr. Norris's opinion based on its lack of support through medically-acceptable clinical and laboratory diagnostic techniques and its inconsistency with the other substantial evidence of record." [R&R, ECF #14, at 81-82]. The Magistrate Judge also recommended this Court find "the ALJ adequately considered the relevant factors in 20 C.F.R.§ 404.1527(c) and gave good reasons for allocating little weight to Dr. Norris's opinion." [R&R, ECF #14, at 82].

Plaintiff raises six objections to the Magistrate Judge's recommendation that the ALJ's decision be affirmed that all relate to the ALJ's evaluation of Dr. Norris's opinion. Plaintiff argues (1) the Magistrate Judge erred in finding the ALJ reasonably relied on the records and opinion of Dr. Timothy Y. Dew, M.D., (2) the ALJ's pointing to normal cervical findings did not preclude limitations in manipulation, (3) the ALJ cherry-picked the records, (4) the ALJ ignored conflicting evidence regarding his lumbar spine, (5) the ALJ improperly relied on records from Dr. Todd. C. Swathgood, M.D., and (6) the ALJ failed to properly evaluate the relevant factors.

Treating physicians' opinions are generally given more weight "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of . . . medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 416.1527(c)(2). The ALJ is required to give opinions proffered by a claimant's treating physician "controlling weight" if the treating physician's medical opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Id.*[6]

---

[6] Because Plaintiff filed his claim prior to March 27, 2017, the undersigned considers the ALJ's evaluation of the medical opinions of record based on the rules codified by 20 C.F.R. § 404.1527. *See* 20 C.F.R. § 1520c (stating "[f]or claims filed before March 27, 2017, the rules in § 404.1527 apply"); *see also* 82 Fed. Reg. 15263 (stating the

11

"[T]he ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171 (4th Cir. 2001).  A finding that the treating source's medical opinion is not entitled to controlling weight does not mean that the opinion should be rejected as the treating source's medical opinions are still entitled to deference and must be weighed using the factors provided in 20 C.F.R. § 404.1527.  SSR 96-2p.  Pursuant to 20 C.F.R. § 404.1527(c), if a treating source's opinion is not accorded controlling weight, the ALJ should consider all of the factors in 20 C.F.R. § 404.1527(c). Those factors included "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650,654 (4th Cir. 2005) (citing 20 C.F.R.§ 404.1527(c)).  When considering the treatment relationship, the ALJ should consider (1) the length of the treatment relationship and the frequency of the examination and (2) the nature and extent of the treatment relationship.  20 C.F.R.§ 404.1527(c)(2).  In all unfavorable decisions, the ALJ's decision must include "specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and reasons for that weight."  SSR 96-2p.

**I. Dr. Dew**

Plaintiff argues that the Magistrate Judge erred in finding the ALJ reasonably relied on Dr. Dew's records and opinion in according little weight to Dr. Norris's opinion.  Although the ALJ did not specifically cite Dr. Dew's opinion in explaining his reason for giving Dr. Norris's opinion little

rescissions of SSR 96-2p, 96-5p, and 06-3p were effective for claims filed on or after March 27, 2017").

12

weight, the Magistrate Judge pointed out that the ALJ "explained he restricted Plaintiff to 'frequent bilateral handling in consideration of his history of bilateral carpal tunnel release which is consistent with the post-operative findings of his hand surgeon [Dr. Dew] who restricted claimant to no heavy lifting or grasping." [R&R, ECF #14, at 76]. In his objection, Plaintiff argues that although no heavy lifting can be consistent with the ALJ's finding of a residual functional capacity (RFC) of light exertional level lifting abilities, no grasping is not consistent with the ALJ's finding of a RFC of frequent handling.

Plaintiff underwent right carpal tunnel release surgery on March 18, 2013, and left carpal tunnel release surgery on April 1, 2013. Tr. 375-76, 392. At a follow up appointment on April 15, 2013, Dr. Dew informed Plaintiff he should not take part in heavy lifting or grasping and instructed Plaintiff on post-operation scar massage and exercises. Tr. 391. At that appointment, Dr. Dew indicated Plaintiff should return for a follow-up recheck a month later. *Id*. A record from that recheck was not provided, so it is not clear if Dr. Dew's instruction to avoid heavy lifting and grasping was ongoing or limited to Plaintiff's recovery from surgery.

When limiting Plaintiff to frequent handling, the ALJ also considered Plaintiff's records as a whole. [ALJ Decision, ECF #9-13, at 24-30]. Besides Dr. Norris's opinion in the questionnaire and Dr. Dew's post-operation instructions, none of Plaintiff's other doctors, who saw him for his shoulder, neck, and wrist pain noted restrictions in Plaintiff's manipulative activities in their records. The ALJ specifically addressed Plaintiff's severe right shoulder rotator cuff tendinopathy and bilateral carpal tunnel syndrome and the related records as contributing to his decision to restrict Plaintiff to frequent bilateral handling. [ALJ Decision, ECF #9-13, at 26-27] Such records noted Plaintiff denied problems with tingling, muscle pain, or muscle weakness and indicated Plaintiff

exhibited normal strength and sensation with no atrophy of bilateral upper extremities. *Id*. Consideration of those conditions combined with the ALJ's reference to Dr. Dew's restrictions provides substantial evidence to support the ALJ's decision to limit Plaintiff to frequent bilateral handling instead of the rare bilateral gross manipulation Dr. Norris restricted Plaintiff to in her questionnaire. Therefore, Plaintiff's objection is overruled.

## II. Nexus Between Normal Cervical Findings and Manipulative Limitations

Plaintiff avers the ALJ's reference to normal cervical findings in Dr. Norris's records does not preclude limitations in manipulation from all of Plaintiff's impairments. The Magistrate Judge noted that "Dr. Norris cited a diagnosis of osteoarthritis of the spine and did not reference any other diagnosis that could reasonably account for the restrictions she indicated." [R&R, ECF #14, at 74-75]. In his objections to the R&R, Plaintiff argues the normal cervical findings in Dr. Norris's records do not preclude limitations in manipulation because he also has chronic back pain, degenerative joint disease of the shoulder, and carpal tunnel syndrome.

The ALJ indicated the record was void of any abnormalities of the cervical spine that would plausibly produce the restrictions assessed by Dr. Norris. [ALJ Decision, ECF # 9-13, at 29]. However, the ALJ also highlighted it gave Dr. Norris's opinion little weight because her opinion was inconsistent with her physical examinations. [ALJ Decision, ECF #9-13, at 29]. Despite indicating Plaintiff should be restricted to rare gross manipulation in the questionnaire, Dr. Norris's medical records related to Plaintiff's neck note Plaintiff had a full range of motion (ROM) with no pain, and her records examining the motor function of Plaintiff's upper extremities note normal tone and muscle bulk and no abnormal movement. Tr. 1276-77, 1284-85, 1291, 1299, 1305-06. Likewise, Dr. Norris cited osteoarthritis and chronic back pain in the medical questionnaire. Tr.

14

586.  However, she did not indicate how those conditions or any other impairments Plaintiff suffered from would limit his ability to engage in manipulative activities, and her medical records are void of mention of such physical limitations.

Furthermore, the ALJ did not solely focus on the absence of such abnormalities of the cervical spine in his evaluation of Plaintiff's disability or in determining how much weight to give Dr. Norris's opinion. [ALJ Decision, ECF # 9-13, at 24-30].  The ALJ specifically noted he considered Plaintiff's severe right shoulder rotator cuff tendionopathy and severe bilateral carpal tunnel syndrome in restricting Plaintiff to frequent bilateral handling.  [ALJ Decision, ECF # 9-13, at 26].  The ALJ also noted Plaintiff was able to engage in a range of activities of daily living, including driving, paying bills, light household chores, and serving regularly as a preacher in his church.  [ALJ Decision, ECF # 9-13, at 29].  Furthermore, as previously indicated, besides Dr. Dew restricting Plaintiff to no heavy lifting or grasping at an appointment a week after his carpal tunnel surgery, Plaintiff's other doctors, who saw him for his shoulder, neck, and wrist pain, did not note similar restrictions in Plaintiff's manipulative abilities.

Accordingly, this Court finds that substantial evidence supports the ALJ's determination to give little weight to Dr. Norris's opinions because they were inconsistent with her physical examinations.  Plaintiff's objection is overruled.

**III. Cherry-Picking**

Plaintiff argues the ALJ improperly relied on unchanged computer generated notations and review of systems sections of Dr. Norris's records.  The Magistrate Judge indicated that the physical examination findings in the medical records differed in other respects from exam to exam, which suggested they were not merely copied and pasted. [R&R, ECF #14, at 75-76].  In his objections,

Plaintiff avers the presence of occasional changes does not resolve internally inconsistent findings related to Plaintiff's neck and upper extremities and argues the ALJ's failure to explain any inconsistencies shows the ALJ cherry-picked the records to reject Dr. Norris's opinions.

"An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." *Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017)(quoting *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010)).

In his decision, the ALJ indicated that on June 28, 2016, "the record is void of any complaint of difficulties with [Plaintiff's] upper extremities and Plaintiff reported 'normal activities of daily living.'" [ALJ Decision, ECF # 9-13, at 30]. The record from that date from Pain Management Associates lists Plaintiff's reviewed problems as including pain in right arm, pain in left arm, pain in upper limb, and dislocation of cervical facet joint. Tr. 1154. Plaintiff argues this inconsistency shows the ALJ improperly cherry-picked records. However, an indication of pain in the upper extremities is not necessarily inconsistent with a finding of no difficulties with the upper extremities. Despite listing pain, the record does not note any functional or manipulative limitations at that time and provides that Plaintiff was able to participate in normal activities of daily living and his pain relief was sixty percent with his medications at the time. Tr. 1154.

Furthermore, as a whole, the ALJ's decision shows he carefully considered all the evidence in the record and did not cherry-pick evidence. The ALJ found Plaintiff to have severe right shoulder rotator cuff tendinopathy and indicated he considered this in restricting Plaintiff to light work with frequent handling. [ALJ Decision, ECF # 9-13, at 26]. The ALJ acknowledged an MRI showing a full thickness tear of the supraspinatus tendon, moderate degenerative changes of the AC

16

joint, and mild impingement.  *Id*.  However, the ALJ also cited medical records indicating Plaintiff had 5/5 muscle strength in his right shoulder in all planes, negative Neer and Hawkins signs, and was neurovascularly intact and highlighted that Plaintiff's only treatment was conservative pain management and a recommendation of home exercise program.  *Id*.  The ALJ noted Plaintiff did not complain of shoulder pain for over one-year and although he ultimately underwent right rotator cuff repair and continued to describe some discomfort, he was unable to describe specifics and was released to return to full-duty work without restriction.  *Id*.

The ALJ also found Plaintiff had severe carpal tunnel syndrome and considered it in restricting him to frequent bilateral handling.  *Id*.  The ALJ acknowledged Plaintiff initially reported bilateral wrist pain with burning, numbness, and tingling and studies confirmed carpal tunnel syndrome.  *Id*.  However, within one month of surgery, Plaintiff's treatment records noted improvement in his symptoms.  *Id*.   Furthermore, Plaintiff sought no further treatment and denied problems with numbness or tingling, muscle pain or muscle weakness.  *Id*.  The ALJ referenced abnormalities in testing in 2018, but noted Plaintiff's medical records indicated he had normal strength and sensation with no atrophy of bilateral upper extremities.  [ALJ Decision, ECF # 9-13, at 27].

Because the ALJ directly addressed Plaintiff's medical records, acknowledged these severe impairments, and explained with specific citations to the record why he found Plaintiff was not limited to the extent he alleged, this Court concludes the ALJ did not improperly cherry-pick the record and that his decision is supported by substantial evidence.  Therefore, Plaintiff's objection is overruled.

**IV. Lumbar Spine**

17

Plaintiff argues the ALJ ignored conflicting evidence related to his lumbar spine.  The Magistrate Judge noted "[w]hile the ALJ specifically cited objective findings during one treatment visit, those findings were generally consistent with other exams in which his providers, including Dr. Norris, sometimes found tenderness and limited ROM of the lumbar spine, but often noted unremarkable findings or no abnormalities." [R&R, ECF #14, at 76-77].

In his objections to the Magistrate Judge's R&R, Plaintiff argues highlighting records that are often unremarkable is not reconciled with findings that were not unremarkable and allows the ALJ to ignore conflicting evidence.

Where the record appears to contain conflicting medical evidence, it is the purview of the ALJ to consider and weigh the evidence, and resolve the conflict. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence).

The ALJ found Plaintiff to have severe lumbar degenerative disc disease and addressed an MRI in December 2013 showing lumbar facet arthropathy at L5/SI.  [ALJ Decision, ECF # 9-13, at 25].  The ALJ also noted some of Plaintiff's medical records indicated tenderness and some restriction in ROM.  [ALJ Decision, ECF # 9-13, at 29].  However, the ALJ also cited Plaintiff's medical records that showed no disc herniation or compressive discopathy and found the only treatment Plaintiff received for his lumbar spine was pain management through medication, which was essentially unchanged since he began treatment, and which resulted in Plaintiff's report of moderate relief of his pain.  [ALJ Decision, ECF # 9-13, at 25].  Plaintiff's medical records

18

sometimes found tenderness and limited ROM, but they often reflected unremarkable findings or no abnormalities and did not indicate any further restrictions. *See* Tr. at 331, 333, 341, 343, 461, 518, 589-91, 609-10, 670-71, 680-82, 685-86, 690-91, 1112-13, 1118, 1121, 1177, 1182, 1187, 1260, 1266, 1271-72. Thus, even though there was some conflicting evidence, there is substantial evidence to support the ALJ's decision to give Dr. Norris's opinion limited weight as related to impairment to Plaintiff's back. Thus, Plaintiff's objection is overruled.

### V. Dr. Swathgood

Plaintiff argues the ALJ erred in finding the limitations Dr. Norris gave are unsupported and inconsistent with the physical examinations of Dr. Swathgood from Blue Ridge Orthopedics. The Magistrate Judge found the ALJ referred to Dr. Swathgood's longitudinal record, not just his opinion that Plaintiff could return to work. [R&R, ECF #14, at 77].

In his objections to the Magistrate Judge's R&R, Plaintiff argues Dr. Swathgood's early mixed findings and post-date-last-insured findings do not negate Dr. Norris's opinions related to more than just Plaintiff's shoulder impairment or foreclose a closed period of benefits.

Plaintiff initially saw Dr. Swathgood in March 2013, at which point Dr. Swathgood noted 5/5 rotator cuff strength, positive Neer and Hawkins signs on the right, equivocal Speed's and O'Brien's tests on the right, tenderness of the right trapezius, and abnormal findings on an x-ray of the shoulder. Tr.388. On May 28, 2013, Plaintiff reported relief of right shoulder pain and Dr. Swathgood noted negative Neer and Hawkins signs and stated Plaintiff was neurovascularly intact in his right upper extremity. Tr. 657. Plaintiff did not complain of right shoulder pain to Dr. Swathgood again until July 23, 2015, at which point he indicated he experienced waxing and

19

waning right shoulder pain for multiple years.[7]  Tr. 1334.  At that time, Dr. Swathgood noted

positive Neer and Hawkins signs, 5/5 rotator cuff strength, 4/5 supraspinatus strength, no crepitus

with active range of motion, and indicated Plaintiff was ligamentously stable and neurovascurlay

intact.  Tr. 1334.  Plaintiff received a steroid injection which was followed by physical therapy.  *Id*.

Dr. Swathgood did not list any limitations to Plaintiff's ability to work at that time.  *Id*.  On October

2, 2015, Plaintiff underwent surgery on his right rotator cuff.  Tr. 1329.   Following the surgery, Dr.

Swathgood reported he was improving, had 5/5 rotator cuff strength, 4+/5 supraspinatus strength,

and was neurovascularly intact and ligamentously stable in his right shoulder.  Tr. 1326-31.   At his

visit with Dr. Swathgood June 27, 2016, Plaintiff noted he continued to be out of work because his

job had no light duty work and Dr. Swathgood noted he would continue him out of work until his

next visit in two months.  Tr. 1327.  This implies Plaintiff may have been eligible for light duty

work at that time.  Dr. Swathgood released Plaintiff to full duty work from the shoulder standpoint

on August 30, 2016, two months after Plaintiff's date last insured.  Tr. 1326.

Based on a review of the foregoing, there is substantial evidence that Dr. Swathgood's

longitudinal records helped negate Dr. Norris's opinion and any claim Plaintiff may have that he had

a qualifying disability for a closed period of benefits, especially when combined with the ALJ's

other reasons for giving Dr. Norris's opinion little weight.  Thus, Plaintiff's objection is overruled.

**VI.  All Relevant Factors**

Plaintiff contends the ALJ erred in failing to discuss the length of the treatment relationship,

frequency of examination, or the nature and extent of the treatment relationship in explaining why

he gave Dr. Norris's opinion little weight.  The Magistrate Judge found that although the ALJ did

---

[7]Dr. Norris completed the questionnaire on September 5, 2014.  Tr. 586.

20

not explicitly discuss those factors, a reading of his decision in its entirety reflects his consideration of the factors. [R&R, ECF #14, at 79].

In his objections to the Magistrate Judge's R&R Plaintiff argues that because the ALJ's earliest mention of Dr. Norris's records was a record from June 4, 2014, the ALJ did not show adequate consideration of the length of Dr. Norris's treating relationship, which began in February 2013.

"[A]n express discussion of each factor is not required as long as the ALJ demonstrates that he applied the § 404.1527(d)[8] factors and provides good reasons for his decision." *Hendrix v. Astrue*, C/A 1:09-1283-HFF, 2010 WL 34448624, at *3 (D.S.C. Sept. 1, 2010). The ALJ did not specifically reference the length of the treatment relationship between Dr. Norris and Plaintiff or the frequency of the examination. However, the ALJ did specifically note that Dr. Norris was Plaintiff's primary care provider, and he referenced her treatment records throughout his decision. [ALJ Decision, ECF # 9-13, at 18-32]. Although the first treatment record the ALJ explicitly referenced from Dr. Norris was from June 4, 2014, and Plaintiff's first visit with her was in March 2013, it is clear that the ALJ understood and acknowledged that Dr. Norris, as a primary care provider, saw Plaintiff frequently over a substantial period of time based on his reference to her records throughout the opinion and his discussion of why he gave her opinion little weight. Because the ALJ considered the required factors and provided good reasons for declining to assign great weight to Dr. Norris's opinion, this Court finds no error in the ALJ's decision and Plaintiff's objection is overruled.

---

[8] The regulation was subsequently amended, making the § 404.1527(d) factors the 404.1527(c) factors. *Compare* 20 C.F.R. § 404.1527 (effective Nov. 1, 2006 to Nov. 11, 2010), *with* 20 C.F.R. § 404.1527 (effective March 27, 2017).

**CONCLUSION**

The Court has thoroughly reviewed the entire record as a whole, the briefs, the Magistrate Judge's R&R, Plaintiff's objections to the R&R, and applicable law.  For the foregoing reasons, the Court respectfully overrules Plaintiff's objections and adopts and incorporates herein the Magistrate Judge's R&R as indicated above.  The Commissioner's decision is hereby **AFFIRMED**.

**IT IS SO ORDERED**.

October 21, 2020                                       s/ R. Bryan Harwell
Florence, South Carolina                          R. Bryan Harwell
                                                              Chief United States District Judge